# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-358

**STATE OF LOUSIANA**

**VERSUS**

**WILLIAM GARY RYDER**

\*\*\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 333,040
HONORABLE GREGORY BEARD, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS**
**CHIEF JUDGE**
\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Charles G. Fitzgerald, and Gary T. Ortego, Judges.

**AFFIRMED.**

**J. Phillip Terrell, District Attorney**
**Kenneth A. Doggett, Jr., Assistant District Attorney**
**Ninth Judicial District Court**
**P.O. Box 7538**
**Alexandria, LA  71306-7358**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
       **State of Louisiana**

**Meghan Harwell Bitoun**
**Louisiana Appellate Project**
**P.O. Box 4252**
**New Orleans, LA  70119**
**(504) 470-4779**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **William Gary Ryder**

**COOKS, Chief Judge.**

Defendant, William Gary Ryder, was charged with eighteen counts of pornography with a juvenile, violations of La.R.S. 14:81.1, one count of sexual battery, a violation of La.R.S. 14:43.1, and one count of failure to register as a sex offender, a violation of La.R.S. 15:542(F)(1). The evidence on the pornography with a juvenile against Defendant came from SD cards his sister, Jenee Dorr, brought to the police the day following Defendant's assault of another sister, Kim Drefenbach. Defendant entered a plea pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976) to the pornography charges. The remaining charges were dismissed by the State. On each count, the court sentenced Defendant to thirty years at hard labor to run concurrently. Defendant is now before this court seeking review of the trial court's rulings on his motion to suppress and the notice of intent to use other crimes evidence.[1] He now seeks reversal of his convictions pursuant to his *Crosby* plea agreement.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Defendant contends the trial court erred in denying his motion to suppress. He claims that officers conducted an illegal search of his personal effects which led to an illegal arrest and illegal seizure of evidence. Defendant previously sought review of the trial court's denial of his motion to suppress contending that law enforcement performed an illegal search of his property when they viewed the contents of SD cards without a warrant and without probable cause to obtain one. This court denied Defendant's writ application, ruling in pertinent part:

> Detective Collura's testimony revealed she believed Defendant's sisters had apparent authority to consent to a search of the cards. Because consent may be based upon apparent authority as well as actual authority, Detective Collura's knowledge at the time she viewed the SD

---

[1] According to the trial court, the following rulings/issues were preserved for review: "[t]he issues involving the Motion to Suppress and the issues involving the 412.2 and the issues involving the 404(B)."

2

cards supports a finding that her search was based upon valid consent. *See State v. Bates*, 51,890 (La.App. 2 Cir. 2/28/18), 246 So.3d 672. Accordingly, the trial court did not err in denying Defendant's "Motion to Suppress."

*State v. Ryder*, 19-422 (La.App. 3 Cir. 10/4/19) (unpublished opinion). Review of this ruling by the supreme court was not sought. Defendant is before this court again seeking review of this ruling. Because Defendant entered a plea, there is no additional evidence presented for this court's consideration.

In *State v. Small*, 19-699, pp. 3-4 (La.App. 3 Cir. 3/25/20), 297 So.3d 835, 837-38, *writ denied*, 20-854 (La. 10/20/20), 303 So.3d 316, this court stated:

> In *State v. Dickerson*, 14-170, pp. 9-10 (La.App. 3 Cir. 6/4/14), 140 So.3d 904, 909-10, *writ denied*, 14-1466 (La. 3/13/15), 161 So.3d 638, this court stated the following regarding the "law of the case" doctrine:
>
> > Under the "law of the case" doctrine, prior decisions of the appellate court are considered binding and may not be reconsidered on appeal absent clear error. *Juneau v. State*, 06-1653 (La.App. 3 Cir. 5/2/07), 956 So.2d 728, *writ denied*, 07-1177 (La. 9/14/07), 963 So.2d 1004; *State v. Molineux*, 11-275 (La.App. 4 Cir. 10/19/11), 76 So.3d 617, *writ denied*, 11-2556 (La. 3/30/12), 85 So.3d 117. "The [law of the case] doctrine is *discretionary* and should not be applied where it would effectuate an obvious injustice or where the former appellate decision was clearly erroneous." *Juneau*, 956 So.2d at 733 (quoting *Trans La. Gas Co. v. La. Ins. Guar. Ass'n*, 96-1477 (La.App. 1 Cir. 5/9/97), 693 So.2d 893, 896) (alternations in original).
>
> > . . . .
>
> > As this honorable court has already ruled on the issue of whether Defendant is entitled to discover the identities of the informants, it may not be reconsidered on appeal absent clear error by the appellate court. Defendant has failed to present any new evidence showing that the denial amounted to clear error or an unjust result. As such, we shall not reconsider Defendant's right to discover the identity of the informants on appeal.
>
> Although Defendant acknowledges in his "Jurisdictional Statement" that docket number 19-85 was a writ application seeking review of the alleged *Brady* violation addressed in his appeal, he fails to address this court's prior ruling in his brief on the topic. As noted above, this court denied Defendant's writ application on this issue,

finding no error in the trial court's ruling. Defendant's argument to this court is the same argument presented in Defendant's prior writ application, and, as such, presents no new argument as to why this court's prior ruling should be considered clear error. Therefore, this assignment of error lacks merit.

In brief, Defendant contends his sisters' "apparent authority" is not clear because they told Captain Secoy that the SD cards belonged to their brother, who was a sex offender. Defendant contends it is not reasonable to conclude his sisters' had authority to consent to a search of the SD cards. He likens this situation to that of a landlord/tenant and notes that a right to privacy cannot be waived by a third party simply because that person has a proprietary interest in the premises.

In Defendant's 2019 writ application to this court, he argued that the SD cards were taken without his permission in a landlord/tenant situation and his sisters, having never looked at the cards, did not know a crime had been committed. This illegal search then allowed officers to obtain a search warrant of his property which produced incriminating evidence.

In *State v. Bryant*, 21-240 (La.App. 3 Cir. 12/22/21), 333 So.3d 495, the defendant filed an emergency supervisory writ seeking review of the trial court's denial of his motion for mistrial. Previously, this court denied the writ application finding no error in the trial court's ruling. *State v. Bryant*, 20-69 (La.App. 3 Cir. 1/27/20) (unpublished opinion), *writ denied*, 20-171 (La. 1/28/20), 291 So.3d 1056. On appeal, this court held:

> Now on appeal, the State contends that our previous ruling on Defendant's writ application is the law of this case. We disagree. In fact, it appears that the State's argument is squarely at odds with the statement of law given in *Davis v. Jazz Casino Co., L.L.C.*, 03-276 (La. 6/6/03), 849 So.2d 497. There, the Louisiana Supreme Court explained that
>
> > once a court of appeal declines to exercise its supervisory jurisdiction by denying the writ, the court was without jurisdiction to affirm, reverse or modify the judgment of the trial court. Thus, any language in the court of appeal's earlier writ denial purporting to find no error in the trial court's certification ruling is without effect.

4

> *Id.* at 498. For this reason, the law-of-the-case doctrine is inapplicable to this situation. We therefore must decide whether the trial court abused its discretion in denying Defendant's motion for mistrial.

*Bryant*, 333 So.3d at 504.

Following the approach taken in *Bryant*, we will proceed with a review of the trial court's ruling on the motion to suppress.

At the hearing on the motion to suppress, Defendant's sister, Jenee Dorr, testified that on February 4, 2017, after having arranged to retrieve some furniture from her parents' home, she arrived and knocked on the door several times, but there was no answer. At that time, the children of the deceased parents owned the home except for Defendant because he had signed his portion over to Ms. Dorr the previous day. However, the siblings were allowing him to live there. Ms. Dorr went to the police department and explained that she had an appointment with her brother to pick up some furniture. She had a key to the home, but could not get in, so she was planning to break in. She testified that she was told by the police as long as she owned the home she could enter in any way she wished. She ultimately entered the home without Defendant's permission.

When Ms. Dorr entered the home, her sister, Kim Diefenbach, was on the floor, and Defendant was yelling. Ms. Dorr contacted the police department and reported her brother had assaulted her sister. Defendant was arrested for assault, and when he subsequently bailed out of jail, he returned to the home where his siblings were removing certain items they had agreed to take. Defendant sent his friend Tina in the house to retrieve some of his belongings. Ms. Dorr testified she took some SD cards from Tina. Defendant sent Tina back in the home to again look for the SD cards.

In her written statement on February 19, 2017, Ms. Dorr said when she told Tina to give her the SD cards, Tina made her promise she would not tell Defendant

she gave them to her. Tina said she planned to tell Defendant she could not find them. Tina pretended to look for them, then returned to the car, and she and Defendant left. About fifteen minutes later, Tina returned with Tavia, Defendant's girlfriend, and told Ms. Dorr that Tavia wanted the SD cards because she was on one of them. Ms. Dorr refused to give them to her but assured her she would not put the pictures on the internet.

Later, Tavia's sister attempted to retrieve the SD cards from Ms. Dorr for Tavia, but she again refused to turn them over. Ms. Dorr gave the SD cards to the Pineville police. She was asked if she recalled what her statement to police was when she turned over this property, and she responded that she did not. The following colloquy ensued:

> Q  Now, let me back up. You said you didn't give them the cards because your father had a lot of them, but at that point, you knew that they were for him though. Not your father.
>
> A  No, I didn't know that. Not until we were handed back cards that had nothing on them. Because there were cards in my dad's wildlife camera, there were cards behind the computer desk. There were cards all over the house.
>
> Q  Okay. So, as you got these SD cards, (inaudible). Did you look at them?
>
> A  No.
>
> Q  If you thought they were your father's, why not look to determine if they were his?
>
> A  I didn't want to do anything with them. And I didn't have the capability of looking at them. Remember, I'm from out of town.
>
> Q  But you know what an SD card is?
>
> A  I do. They are for cameras and computers.
>
> Q  And you know how you can pull them out of a camera into a computer to –
>
> A  I don't have – I didn't have a computer available.
>
> Q  You didn't think about taking them back home?

A  No.

Q  The cards with you?

A  Nope.

Q  So, your initial thinking was take them to the police?

A  Take them to the police.

Q  Why deliver those SD cards to the police?

A  Because of all the things that my brother wanted out of that house, he wanted two things.  He wanted my dad's truck keys and he wanted those cards.

　　　. . . .

A  (Reading) : The reason I took the SD cards from Tina was because my aunt had told me and my sister that our brother had been hitting porno sites on the internet.  I wasn't sure since he was a convicted sex offender if he was allowed to do that.  And since those SD cards were the only thing he wanted out of the house, they must've had something on them that he didn't want anyone to see.  I thought there may have been downloaded images on them (end of reading).

Q  But you never looked to see, did you?

A  I did not.

When asked if she took this "stolen property" and gave it to the police, Ms. Dorr responded, "I took property that was in my dad's house that we all owned." She said she did not know any crimes had been committed at the point she delivered the SD cards to police.

On cross-examination, Ms. Dorr explained that before her father died, he told her sister she could have the bedroom furniture.  Because Defendant had stopped paying the mortgage, on February 3rd, he signed an act of donation giving Ms. Dorr his portion of the house.  On the day this paperwork was done, Ms. Dorr told Defendant she would arrive at the residence the following day to pick up the furniture.  She found the SD cards at issue in the computer room[2] in a brass plant

---

[2]Ms. Dorr testified that the computer room was an "entranceway" from the back door, and it was not "closed off."

stand with an artificial plant sitting on them. On redirect examination, she again explained that she suspected the cards may contain pornographic images of women, and she was unsure whether Defendant should have internet access considering he was a convicted sex offender. She did not suspect that the cards contained child pornography.

Kim Diefenbach also testified at the motion to suppress hearing. Ms. Diefenbach testified she was assaulted by Defendant on February 4, 2017. She stated she was the one who decided to contact the police department about the SD cards. Ms. Diefenbach said she did so because there were several red flags which made her think the SD cards contained something that should not be there. However, she had no specific knowledge of a crime. On cross-examination, she said she thought the cards might contain "child pornography or whatever that he had downloaded off the internet." She said the reason she thought this is because Defendant had a history of molesting her and other family members. On redirect examination, she testified they turned over four SD cards that Defendant had hidden under the plant. More cards later found in the house were left on the counter in the kitchen. She provided a written statement to police on February 19, 2017, giving the details regarding the SD cards belonging to her brother and his attempts to retrieve them from the home.

On cross-examination, Ms. Diefenbach confirmed that Defendant signed over his portion of the parents' estates after the 2015 judgment of possession had originally granted ownership of the property to all the siblings.

Detective Miranda Collura of the Pineville Police Department viewed the images on the SD cards at the direction of Captain Kenny Secoy. When asked if it was normal procedure to search someone's property without a warrant, Detective Collura explained to her knowledge at that time, the cards "were in a home that belonged to the people that brought them." After she viewed them, she asked the captain who brought them in, and he explained:

He explained it to me and stated that their brother had lived in the home previously before it was foreclosed on and that, you know, he no longer owned the home anymore and that he was a sex offender and that is, I guess, the reason that they had cause for concern. I asked if he was a registered sex offender at that point is when I got his name. He told me he was not registered but he was supposed to be. And dealing with what's on the SD cards, that's how I figured out the whole situation.

Detective Collura said she had no knowledge of a crime being committed, but she started an investigation after viewing the SD cards. Because some of the clips on the last SD card showed what appeared to be a video taken with a cell phone, she spoke to Ms. Diefenbach and learned that Ms. Tavia Smading's (Defendant's girlfriend) granddaughter would occasionally stay at Defendant's home. The video on the SD card was very dark, and the child in the video appeared to be asleep. Further investigation revealed that Ms. Smading's granddaughter was in Defendant's home at the time the video was taken. The child was interviewed at the Advocacy Center, but she had no recollection of any events. After further investigation, Detective Collura obtained a search warrant for the home where a computer and other SD cards were obtained. According to Detective Collura, "all of the same images that were on the SD card that had the child pornography on them, and over a hundred other pictures of naked children were found on that computer." Not all photos met the definition of child pornography.

Detective Collura was asked whether, without the SD cards and the information from Defendant's sisters that he was a sex offender, there was anything for her to investigate. The following colloquy ensued:

A       If they had come to us and said they had a sex offender brother I would have then went [sic] to our sex offender registry officer and asked him if he had him registered. He wasn't registered to talk to him and find out why he wasn't registered. And I don't believe he was supposed to have any type of computer.

Q       Yeah, but simply arresting him for failure to register, clearly you could have found that out just by looking at the computer at the station?

9

A       Once we had his name and knew he was a sex offender living in our area, we could have seen that he was not registered, yes, sir. But we would have went [sic] to his home.

Q       You could have arrested him for that.

A       We could have arrested him for failure to register, yes, sir.

She agreed that failure to register does not prove Defendant had child pornography and more investigation probably would have been needed before a warrant to search his home could have been obtained. She said it depended on what was seen when they were in the home, adding "because the door to where the computer is is [sic] right there on the side, we would have seen that he had a computer." However, she agreed they would not have been there to search; the original contact would be for failure to register. Detective Collura admitted she viewed the SD cards without a warrant because she had no reason to believe "that they didn't come to us in a legal way."

Captain Secoy testified that he was contacted by his sister-in-law, Karen Atwood, regarding Defendant's sisters finding the SD cards believed to be Defendant's in their parents' residence. He did not speak with them directly.

The court, in ruling on the motion, noted that this was a private search conducted by individuals of a home with no involvement by law enforcement. The sisters discovered property in a home which was rightfully theirs, and their suspicion regarding the property led them to turn it over to police. The court concluded, "The information obtained by the police in regards to a search warrant that led to the evidence in the house was based upon the probable cause from information provided by private individuals." Accordingly, the court denied Defendant's motion to suppress.

"A warrantless search may be valid even if consent was given by one without authority, if facts available to officers at the time of entry justified the officers' reasonable, albeit erroneous, belief that the one consenting to the search had

authority over the premises." *State v. Edwards*, 97-1797, p. 11 (La. 7/2/99), 750 So.2d 893, 901, *cert. denied*, 528 U.S. 1026, 120 S.Ct. 542 (1999). Detective Collura's testimony established that from information provided to her by Captain Secoy, she believed the ladies, whom she did not know the names of, had obtained the SD cards from a home belonging to them:

> A     That Monday after the weekend that the SD cards were turned over to the police department when I came in, the captain in our department, Captain Secoy, had given me the envelope and stated that some ladies that were cleaning out their deceased parents' house over the weekend had come across some SD cards that they believed may contain some explicit material and that they had turned them over to us. And he asked me to look at them.
>
> . . . .
>
> A     It wasn't until after I had already viewed them, realized what was on them that I went to the captain that gave them to me and asked, who, like the names and then tried to find out who it belonged to.
>
> . . . .
>
> A     The SD cards that were brought in – from the knowledge that I had at that moment, were in a home that belonged to the people that brought them. I didn't have any reason to believe that they did not – that the belongings in the house didn't belong to them if the home was their deceased parents'.

After she viewed the contents of the SD cards, she learned more information from Captain Secoy:

> A     I asked the captain who brought them in. He explained it to me and stated that their brother had lived in the home previously before it was foreclosed on and that, you know, he no longer owned the home anymore and that he was a sex offender and that is, I guess, the reason that they had cause for concern. I asked if he was a registered sex offender at that point is when I got his name. He told me he was not registered but he was supposed to be. And dealing with what's on the SD cards, that's how I figured out the whole situation.

Thus, at the time of Detective Collura's search of the SD cards, her knowledge was that two women had found the SD cards inside of their deceased parents' home which then belonged to them. Even assuming the consent was unauthorized, the facts available to Detective Collura at the time she viewed the SD cards justified her

11

belief that the sisters had authority to consent to the search. Because consent is an exception to the requirement that law enforcement obtain a warrant before conducting a search or seizure, the trial court did not err in denying Defendant's motion to suppress.

## ASSIGNMENT OF ERROR NO. 2

Defendant contends the trial court erred in ruling evidence of four prior acts would be admissible at trial pursuant to La.Code Evid. art. 404(B) because the evidence was not relevant to the instant charges of pornography involving juveniles and the probative value was substantially outweighed by the prejudicial effect it would have at trial.[3] The State notes that in addition to the evidence being admissible under La.Code Evid. art. 404(B), La.Code Evid. art. 412.2 allows for the introduction of evidence which indicates a lustful disposition toward children.

On May 24, 2019, the State filed a Motion to Introduce Evidence Pursuant to Louisiana Code of Evidence Article 404(B)(1) asserting that Defendant had committed two similar acts, the first being a 1991 charge of carnal knowledge of a juvenile alleging he had sexual intercourse with a fourteen-year-old female child (arrest date: August 10, 1991; victim's date of birth: August 27, 1976). The charge was later amended to two counts of contributing to the delinquency of a minor to which Defendant pled guilty. The second act was three counts of aggravated rape

---

[3]The State also filed a Notice of Intent to Introduce Evidence Pursuant to Louisiana Code of Evidence, Article 412.2, seeking to introduce acts committed against his sisters spanning from 1966 through 1972, the 1991 incident in which he had sexual intercourse with a fourteen-year-old female victim, and the three counts of aggravated rape. Although the State noted in its motion that the Defendant was not entitled to a pretrial hearing on this motion, the Defense filed a motion requesting a pretrial hearing. The court ordered the State to show cause on October 9, 2018, why a pretrial determination on the admissibility of evidence intended to be introduced should not be held. This matter was apparently continued and then brought up at the March 1, 2021 proceeding, but the State passed on the art. 412.2 matter and proceeded only on the 404(B) issue. The art. 412.2 matter was then set for May 3, 2022.

At the March 21, 2022, proceeding, although there were comments indicating that the 412.2 motion had been heard and the issue was being preserved for review pursuant to *Crosby*, there is no indication in the record before this court that the art. 412.2 motion was ruled upon.

of a nine-year-old child between 1999 and 2000 which resulted in Defendant's guilty plea to an amended charge of forcible rape and two counts of aggravated rape. The motion indicated the State sought to introduce the evidence for all purposes proper under the law, specifically including, but not limited to: motive, opportunity, knowledge, identity, plan, intent, and absence of mistake or accident.

This motion was heard on March 1, 2021. The State's intent was to use the information to show opportunity because Defendant had access to children and took advantage of them as well as plan, pattern, intent (his intent in touching the juvenile), and knowledge (because he had prior convictions, he could not claim he was not aware of what he was doing). The prosecutor noted that at the time of the 1991 incident, Defendant was thirty-three years old, and he had sex with a fourteen-year-old juvenile. The defense argued that the acts were not similar in that they involved Defendant having sexual intercourse with minors, whereas the sexual battery in the present case did not; it simply involved a touching.[4]

The court ruled the prior convictions were for crimes that were associated with the type of crime which Defendant was currently charged. It determined the evidence met the standard of La.Code Evid. art. 404(B) and the probative value outweighed the prejudicial effect. Specifically, the court found:

> [404] (B) introduction of evidence the State need only a sufficient showing of evidence in support of finding that the defendant committed other crimes, wrongs, or acts. This evidence is a conviction in Winn Parish and a docket number. And also a misdemeanor conviction in Rapides Parish of the Bill of Information and minutes of that. The court looks to see to determine whether that evidence provides for an independent and relevant reason to show either motive, opportunity, intent, preparation, plan, knowledge, identity, absence or mistake or accident. The court has reviewed the evidence. They are convictions involving crimes that are associated with the type of crimes that the defendant is currently on trial for. The court also notes that it's the determination of whether that evidence would be excluded because of it's [sic] probative value as balanced against the prejudicial effect. Whether it would be unfair for that evidence to be admitted in the trial. The court is going to find that the evidence meets the standard for

---

[4] There was no further information regarding the prior convictions and the instant offense of sexual battery.

404(B). The State has shown sufficient similarities between two convictions and the type of crime that the defendant is on trial for, they show a similarity between the two. Also show that the probative value outweighs any prejudicial effect in this matter and the court will not deny it based upon that.

Louisiana Code of Evidence Article 404(B) states in pertinent part:

**B. Other crimes, wrongs, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Louisiana Code of Evidence Article 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

Louisiana Code of Evidence Article 412.2 provides in pertinent part:

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

Although Defendant argues the prior acts are not relevant to his charges of pornography involving juveniles, at the time of the pretrial rulings, prior to the entry of his *Crosby* plea, Defendant was also charged with and proceeded to trial on a charge of sexual battery of a minor. The bill of information reflected on or about November 8, 2016, Defendant committed a sexual battery upon A.B., whose date of birth is October 21, 2009, by intentionally touching the victim's anus or genitals using any instrumentality or part of his body without the victim's consent.

We find it is not necessary to determine whether the acts which were the subject of the State's May 24, 2019 motion were admissible under La.Code Evid. art. 404(B) as they were clearly admissible under La.Code Evid. art. 412.2, as discussed below.

In *State v. Mayeux*, 19-369, pp. 6-7 (La. 1/29/20), __ So.3d __, *cert. granted on other grounds*, __ U.S. __, 141 S.Ct. 225 (2020), the supreme court stated:

> Finally, defendant contends the district court erred in admitting evidence he abused and threatened his wife as well as his previous romantic partners, which abuse included incidents of choking. The court of appeal thoroughly examined these claims and we have little to add to that court's analysis, other than to note that [La.Code Evid. art.] 412.4 also applies here. . . .
>
> This article was enacted by 2016 La. Acts 399, and amended to encompass abusive behavior against dating partners by 2017 La. Acts 84, which amendment became effective on August 1, 2017 (before defendant's trial began on August 28, 2017). While the State did not invoke Article 412.4 in the district court, it (as the prevailing party in the evidentiary rulings) is not precluded from doing so now, provided the State's new invocation of the article does not require going outside of the record. *See State v. Butler*, 12-2359 (La. 5/17/13), 117 So.3d 87, 89. Here, defendant's previous abuse, including choking, of his spouse and his dating partners was admissible under Article 412.4.

In *State v. Dawson*, 19-1612, pp. 14-17 (La.App. 1 Cir. 11/17/20), 316 So.3d 77, 88–89, *writ denied*, 21-217 (La. 5/4/21), 315 So.3d 222, the first circuit held:

> In his final assignment of error, defendant claims the trial court erred when it permitted the State to introduce evidence of a 1991 juvenile conviction in Mississippi for sexual battery of a victim under the age of 14. Defendant argues the offense to which defendant pled guilty is not similar in "time, location, or modus [operandi,]" "was purely prejudicial," and was introduced to "portray [defendant] as a bad person[.]" Defendant concludes that the inclusion of this evidence was not harmless, as it unfairly bolstered the State's allegation that defendant is a chronic sexual predator.
>
> The State responds that the introduction of the Mississippi prosecution was supported by [La.Code Evid. art.] 412.2(A), and that the trial court did not err in admitting it into evidence. It also observes defendant's arguments citing [La.Code Evid. art.] 404(B) are not relevant to the claim made. Further, even assuming any error, the State argues the admission was ultimately harmless in light of the other evidence presented at trial.

Before trial, the State filed notice that it intended to introduce "lustful disposition" evidence in the form of a 1991 guilty plea where defendant pled guilty to sexual battery after having been charged with rape. The trial court denied defendant's objection to its admission. The indictment and guilty plea were admitted into evidence, over defendant's objection.

Generally, courts may not admit evidence of other crimes or bad acts to show defendant is a man of bad character who has acted in conformity with his bad character. [La.Code Evid. art.] 404(B)(1). However, the State may introduce evidence of other crimes if the State establishes an independent and relevant reason, *i.e.*, to show motive, opportunity, intent, or preparation, or when the evidence relates to conduct which constitutes an integral part of the act or transaction that is the subject of the present proceeding. [La.Code Evid. art.] 404(B)(1). Even when the other crimes evidence is offered for a purpose allowed under Article 404(B), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. *State v. Taylor*, 2016-1124 (La. 12/1/16), 217 So. 3d 283, 292. . . .

. . . .

Louisiana Code of Evidence article 402 provides that "[a]ll relevant evidence is admissible[.]" Under [La.Code Evid. art.] 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Evidence is deemed relevant if such evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. [La.Code Evid. art.] 401.

Prior crimes differing from those at issue in a prosecution are still probative to establish a defendant's "lustful disposition" toward children. *See, e.g., Friday*, 73 So. 3d at 927. It is not necessary, for purposes of Article 412.2 testimony, for defendant to have been charged, prosecuted, or convicted of the "other acts" described. *State v. Berry*, 51,213 (La. App. 2nd Cir. 5/17/17), 221 So. 3d 967, 986, *writ denied*, 2017-1146 (La. 12/17/18), 257 So. 3d 1260. Further, "in enacting Article 412.2, the Legislature did not see fit to impose a restriction requiring such evidence to meet a stringent similarity requirement for admissibility." *State v. Wright*, 2011-0141 (La. 12/6/11), 79 So. 3d 309, 317. *See also State v. Luper*, 2019-0489 (La. App. 1st Cir. 11/15/19), 2019 WL 6045367, at 6 (unpublished) (possession of soiled children's diapers properly admitted to make the inference of a sexualized view of young children). The burden on the State at the instant trial regarding the prior acts was to prove them by a preponderance of the evidence, not beyond a reasonable doubt as required to obtain a conviction. *State v. Harris*, 2011-253 (La. App. 5th Cir. 12/28/11), 83 So. 3d 269, 278, *writ denied*, 2012-0401 (La. 8/22/12), 97 So. 3d 376. Finally, a trial court's ruling on the admissibility of the additional other crimes evidence will not be

disturbed absent an abuse of discretion. *State v. Altenberger*, 2013-2518 (La. 4/11/14), 139 So. 3d 510, 515 (*per curiam*); *State v. Jackson*, 2018-0261 (La. App. 1st Cir. 11/2/18), 265 So. 3d 928, 939-40, *writ denied*, 2018-1969 (La. 4/22/19), 268 So. 3d 304. *See also Wright*, 79 So. 3d at 316.

Here, the then sixteen-year-old defendant pled guilty to the sexual battery of a juvenile female under the age of fourteen years old. Though more details are not provided by the record, it is clear that the age and gender of the victim in that case are squarely consistent with the ages and gender of the three victims of the offenses for which he was tried in the instant case. Moreover, even assuming arguendo that the trial court erred, the effect of that error was rendered harmless by the overwhelming evidence of guilt presented by the State. *See State v. Becnel*, 2016-1297 (La. App. 1st Cir. 4/20/17), 220 So. 3d 27, 34, *writ denied*, 2017-1023 (La. 3/9/18), 238 So. 3d 451 (observing that the erroneous admission of other crimes evidence is subject to a harmless-error analysis, which considers whether the jury's verdict was "surely unattributable to the error"). This claim is without merit.

Finally, in *State v. Smith*, 19-607, pp. 3-4 (La.App. 5 Cir. 1/21/20), __ So.3d __, __, *writ denied*, 20-328 (La. 5/1/20), 295 So.3d 945, the court discussed the prejudicial prong of the balancing test set forth in La.Code Evid. art. 403:

Any inculpatory evidence, however, is prejudicial to a defendant, especially when it is probative to a high degree. As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged. *State v. Rodgers*, 16-14 (La. App. 5 Cir. 10/26/16), 202 So.3d 1189, 1201, *writs denied*, 16-2189 (La. 9/15/17), 225 So.3d 479 and 16-2093 (1/29/18), 235 So.3d 1104.

For purposes of [La.Code Evid. art.] 412.2, it is not necessary for the defendant to have been charged, prosecuted, or convicted of the "other acts" described. *State v. Klein*, 18-22 (La. App. 4 Cir. 8/22/18), 252 So.3d 973, 985, *writ denied*, 18-1569 (La. 4/15/19), 267 So.3d 1125. In fact, in *State v. Harris*, 11-253 (La. App. 5 Cir. 12/28/11), 83 So.3d 269, 280, *writ denied*, 12-401 (La. 8/22/12), 97 So.3d 376, this Court held that evidence of a defendant's prior rape of a juvenile, of which he was acquitted, was admissible in a later prosecution for aggravated rape of a juvenile. This Court found that the evidence of the prior rape of the juvenile was not so prejudicial as to warrant exclusion from trial and that the evidence was probative in its ability to show that the defendant had a propensity to remove sleeping children from where they lay and commit forced sexual offenses by using threats, thus establishing a lustful disposition towards children. *See also State v. Kiger*, 13-69 (La. App. 5 Cir. 10/30/13), 128 So.3d 552.

The prior sex offenses were properly found admissible by the trial court. The prior offenses all involved Defendant having sexual intercourse with minor victims while the current offense involved an intentional touching of a minor victim's genitals or anus without consent. Although the acts are different, they were all sexual acts involving underage victims, and the prior acts clearly show Defendant's lustful disposition toward children. Further, there is no indication that the evidence of these prior acts would have been unduly and unfairly prejudicial. Accordingly, the trial court did not abuse its discretion in finding these prior acts would be admissible at Defendant's trial.

On March 9, 2022, the State filed a Notice of Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts, seeking to introduce evidence regarding the 2017 charge of second-degree battery of his sister which resulted in his 2021 guilty plea to simple battery. The State contended that this offense started the chain of events that ultimately led to the discovery of the child pornography. Additionally, the State sought introduction of Defendant's 2015 charge of failure to register as a sex offender which was ultimately dismissed by the State. The State sought to introduce this evidence for purposes proper under the law, including, but not limited to: knowledge, preparation, plan, intent, opportunity, identity, and absence or mistake or accident, in accordance with La.Code Evid. art. 404(B).

On March 21, 2022, prior to Defendant entering his *Crosby* plea, the court considered the March 9, 2022 motion and ruled that the guilty plea to simple battery was admissible to prove motive. The court ruled that the arrest for failure to register as a sex offender was admissible as well, with no specific basis being given.

The only one of these two prior acts which Defendant complains of on appeal is the 2017 simple battery of his sister. He argues that it is not probative of any matter at issue in the case. The State contends that this offense, which occurred just days before the sisters entered the subject property, "started the chain of events that

led to the Defendant's arrest" and that the trial court properly ruled that the battery conviction shows motive in preventing the sisters from entering the property.

We find this evidence was admissible in that "it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." La.Code Evid. art. 404(B). The battery sought to be introduced occurred on February 4, 2017, when the first sister entered the house to retrieve furniture. Defendant was arrested shortly thereafter and returned to the home after bailing out of jail. The SD cards containing the pornography were located and turned over to the police department that day. On the following Monday morning, the cards were viewed at the police station and were found to contain child pornography. Further investigation ensued from that point.

In *State v. Colomb*, 98-2813 (La. 10/1/99), 747 So.2d 1074, the supreme court found the challenged evidence was an integral part of the act which was the subject of the proceeding. The defendant's conviction and sentence were reversed by this court because the trial court admitted evidence that the defendant possessed marijuana immediately *after* police found a handgun in his van, the act which led to his charge and conviction of possession of a firearm by a convicted felon. This court found the case was distinguishable from cases where the events could not be separated from the crime charged and found the probative value was outweighed by the prejudicial effect. The supreme court disagreed:

> The events leading to defendant's arrest began when the police spotted a van parked in the middle of the street in "The Hill," an area in Opelousas known for drug trafficking. The defendant stood at the opened door on the driver's side of the vehicle; gathered around him were five or six individuals familiar to the officers from their illegal drug activity. As the group scattered at the approach of the officers intent on investigating conduct they found "very suspicious" of street-level drug trafficking, the defendant got back into the van and attempted to leave the scene. He stopped short when the officers ordered him to pull over, got out of the vehicle, stated that he "didn't have anything," and invited the officers to prove him wrong. The officers found on the floorboard of the van a loaded .25 caliber semi-automatic handgun in a small tray partially tucked under the passenger seat but otherwise

readily accessible to the driver of the vehicle. According to the officers, the defendant immediately stated something to the effect that, "That's my old lady's gun. I just use it for my protection." When the officers asked whether he had any drugs on his person, the defendant at first replied that he did not, but then pulled up his shirt to reveal a clear plastic bag containing marijuana. The defendant removed the bag and handed it over, explaining that it contained his personal "stash."

In his own testimony, the defendant told jurors that both the van and the gun belonged to his wife, that he had borrowed the vehicle to run some morning errands, and that he had not realized she had placed the weapon in the glove compartment of the vehicle until he braked suddenly at the order of the officers and sent the gun spilling out onto the floor board. The defendant testified that he had been shocked by the officers' discovery and informed them that his wife owned a store and that she had the weapon for her protection. In her testimony, the defendant's wife confirmed that the gun belonged to her, that she used it for protection in making bank deposits from the clothing store she owned, and that she had simply forgotten to remove the gun from the van when she returned home on the night before the incident.

This Court has long approved of the introduction of other crimes evidence, both under the provisions of former R.S. 15:448 relating to *res gestae* evidence and as a matter of integral act evidence under La.C.E. art. 404(B), "when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." *State v. Brewington*, 601 So.2d 656, 657 (La.1992). This doctrine encompasses "not only spontaneous utterances and declarations made before and after commission of the crime but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances." *State v. Molinario*, 383 So.2d 345, 350 (La.1980). We have required a close connexity between the charged and uncharged conduct to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *State v. Haarala*, 398 So.2d 1093, 1098 (La.1981) (emphasis added); *see also* 1 *McCormick on Evidence*, § 190, p. 799 (4th ed., John William Strong, ed., 1992) (other crimes evidence may be admissible "[t]o complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.") (footnote omitted). The *res geaste* or integral act doctrine thus "reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." *Old Chief v. United States*, 519 U.S. 172, 186, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997). The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the

willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." *Id.*

In this case, evidence of the defendant's marijuana possession contemporaneous with the police discovery of the firearm in his truck provided not only narrative completeness to a case which began as a narcotics stop but also formed an integral part of the context facts in which jurors evaluated the state's case for defendant's exercise of dominion and control over the weapon found under the passenger seat of the van. The state presented additional opinion testimony from the police that defendant had paraphernalia associated with drug trafficking and that guns and drugs go "hand in hand." Jurors need not have credited any of that testimony, however, to conclude for themselves that the officers' disputed testimony about defendant's spontaneous admission he possessed his wife's gun for his own protection appeared fully consistent with the undisputed circumstances of the case that the police had stopped the defendant in a high crime area in Opelousas in possession of his own drug "stash."

Given the probative value of these context facts, we need not decide here whether integral act evidence presented under the authority of La.C.E. art. 404(B) must invariably pass the balancing test of La.C.E. art. 403. Cf. former R.S. 15:447 ("What forms any part of the *res gestae* is always admissible in evidence."); *State v. Brown*, 428 So.2d 438, 442 (La.1983) ( "[E]vidence of other crimes included in the res gestae is admissible without balancing its probative value against the prejudicial effect.") (citations omitted); *State v. Smith*, 94–1502, p. 6 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1083 ("It is no longer true that whatever forms part of the res gestae is admissible, and such evidence remains subject to the [art. 403] balancing test."); 1 *McCormick on Evidence, supra*, § 190, p. BOD, n. 12 ("It seems preferable to say that this evidence of 'intertwined' crimes may be admitted, since it does not run afoul of the propensity rule, assuming that the balance of probative value and prejudice favors admission and that the normal safeguards . . . for dealing with other crimes evidence are observed."). Unfair prejudice to a criminal defendant "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180, 117 S.Ct. at 650. We think it clear that evidence of defendant's marijuana possession invited jurors to draw the necessary inferences for their verdict not on the basis of his bad character, otherwise revealed by evidence of his prior convictions for the illegal discharge of a firearm, issuing worthless checks, and receiving stolen property, but on the basis of his contemporaneous conduct and statements accompanying the officers' discovery of the handgun in his wife's van.

*Id.* at 1075-77.

As in *Colomb*, the battery at issue was an integral part of the act that is the subject of this proceeding. It immediately preceded the discovery of the SD cards

and occurred during the course of events on the day in question. Further, there is no indication that its inclusion at trial would have been unduly prejudicial. Accordingly, the trial court did not abuse its discretion in ruling this evidence would be admissible at trial.

## DECREE

For the foregoing reasons, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**